U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAY 27 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **CADLEROCK JOINT VENTURE, L.P.** | **CIVIL ACTION NO. 06-1052** |
| -vs- | **JUDGE DRELL** |
| **ESTHER C. VANDERLICK** | **MAGISTRATE JUDGE KIRK** |

# R U L I N G

Before the Court is a motion for summary judgment (Doc. 17) filed by plaintiff CadleRock Joint Venture, L.P. ("CadleRock"). For the reasons set forth below, the motion is DENIED.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)).

In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992). Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## II. BACKGROUND AND FACTS

CadleRock seeks payment from defendant Esther C. Vanderlick ("Vanderlick") on two notes executed by Vanderlick and her then-husband, Brian Vanderlick, payable to the order of The Farmers Bank & Trust of Cheneyville ("Farmers Bank"). CadleRock now admits that "[t]here exists some alteration of the notes" (Doc. 17-4, p. 5), which CadleRock describes as follows:

> Note 1 bears a date of June 17, 1997, and is payable in 7 annual installments of $12,525.19 each, with the first installment due on June 17, 2000, with the remaining installments due thereafter. The maturity date listed on the note is June 17, 2004. The [defendant's] expert's report on this note indicates that both the note date and the maturity date were "Whited Out" and the dates recited above are the dates that are typed on top of the White Out (or Liquid Paper or a similar product). The original dates underneath the White Out were March 4, 1999, for the note date, and March 4, 2004, for the maturity date. The expert report indicated the visible dates are April 17, but a review of the actual document shows that the visible dates are June 17. The reference to the two April 17 dates appears to be a clerical error.
>
> The report also shows that, by using the correcting tape feature of the typewriter on which Note 1 was typed, the interest rate was lowered from 11% to 10.75%. The report notes that the correction tape is a built in feature of the typewriter, and the report does not claim that the paper was removed and then reinserted in to the typewriter in order to make this

> correction. . . . The report concludes that there were no other alterations to Note 1. . . .
>
> As to Note 2, the only item the expert noted was that the amount in the Total of Payments box was changed by increasing the amount from $227,391.25 to $267,391.25, again using the correction tape feature of the typewriter on which that note was prepared. . . . Further, the finance charge and the amount financed on this note, when added together, total $267,391.25, not $227,391.25. Additionally, the "Total of Payments" amount in the left hand column on the note, which itemized the amounts that make up the total of payments, shows the total of payments number to be $267,391.25, not $227,391.25. Lastly, the amount of the note, when typed out in words in the first and second lines of the body of the note shows the typed words, "TWO HUNDRED SIXTY-SEVEN THOUSAND THREE HUNDRED NINETY-ONE AND 20/100 [sic]."

(Doc. 17-3, pp. 5-7) (argument omitted).

The Vanderlicks made payments together on the two notes until their divorce, on or about November 2, 2001. Esther Vanderlick admits that she has made no payment on either note since the divorce. The parties dispute the amounts actually paid on the notes and whether the notes were paid off. Both parties have presented computer printouts apparently supporting their positions (Docs. 17-2, pp. 8-11, and 22-3, pp. 1-3), and both parties attempt to explain these documents with affidavits (Docs. 17-2, p. 7, and 22-3, pp. 4-5).

The following facts, concerning how CadleRock came to be in possession of the note, are uncontested:

> 5. On December 17, 2002, pursuant to an order of the 9th Judicial District Court for the Parish of Rapides, State of Louisiana, In the Matter of The Farmers Bank & Trust of Cheneyville, Cheneyville, Louisiana, a Louisiana Banking Corporation, Case No. 211,299 on the docket of that Court, John D. Travis, Commissioner of Financial Institutions for the State of Louisiana was confirmed as conservator of The Farmers Bank & Trust of Cheneyville. A true and correct copy of said order is attached to the complaint.

> 6. Further, on December 17, 2002, by order of the 9th Judicial District Court for the Parish of Rapides, in the above and aforecaptioned matter, The Farmers Bank & Trust of Cheneyville was ordered closed, the liquidation of The Farmers Bank & Trust of Cheneyville was ordered commenced, the Federal Deposit Insurance Corporation was confirmed as receiver of The Farmers Bank & Trust of Cheneyville, and the conservatorship of John D. Travis was discharged. A true and correct copy of said order is attached to the complaint.
>
> 7. By virtue of said order, the Federal Deposit Insurance Corporation was vested with title to all assets of The Farmers Bank & Trust of Cheneyville without the execution of any instruments of conveyance, assignments, transfer or endorsement.
>
> 8. On April 19, 2004, the Federal Deposit Insurance Corporation, as receiver for The Farmers Bank & Trust of Cheneyville, did endorse both of said notes to the order of CadleRock Joint Venture, L.P., as can be seen from the allonges attached to the copies of said notes attached to the complaint, which allonges are true and correct copies of the originals.

(Doc. 17-4, pp. 2-3).

On June 21, 2006, CadleRock, an Ohio limited partnership with its principal place of business in the County of Trumbull, Ohio, filed the instant suit against Vanderlick, a Louisiana domiciliary, seeking an amount in excess of $150,000 on the two notes, representing both principal and interest, as well as contractually established attorney's fees of twenty-five percent (25%) of principal and interest. CadleRock properly asserted subject matter jurisdiction under 28 U.S.C. § 1332, because there is complete diversity and the amount in controversy exceeds $75,000. Vanderlick answered on July 24, 2006, denying all liability.

On October 26, 2007, CadleRock filed the motion for summary judgment (Doc. 17) now before us, claiming holder in due course status through the Federal Deposit Insurance Corporation ("FDIC"), which gained possession of the note in its capacity as

receiver in the liquidation of Farmers Bank. In opposition, Vanderlick argues that the documents relied upon by CadleRock in seeking summary judgment, the FDIC's Farmers Bank records (Doc. 17-2, pp. 8-11), are incomplete and insufficient for summary judgment; that the facial alteration of the notes is significant to the outcome of this case; and that account histories obtained by Vanderlick for both Farmers Bank notes (Doc. 22-3, pp. 1-3) shows no outstanding balance due on the accounts. In short, the parties do not agree about whether CadleRock achieved holder in due course status; whether and to what extent the alteration of the two Farmers Bank notes affects this suit; and what exactly the summary judgment evidence shows regarding outstanding liability.

### III. LAW AND ANALYSIS

Because much of this ruling turns on Vanderlick's defenses and CadleRock's status as either a holder in due course or mere holder, we turn first to those rules. La. R.S. § 10:3-305 ("Defenses and claims in recoupment") provides, in relevant part:

> (a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:
>
> > (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;
>
> > (2) a defense of the obligor stated in another Section of this Chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

> (3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.
>
> (b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in Subsection (a)(1), but is not subject to defenses of the obligor stated in Subsection (a)(2) or claims in recoupment stated in Subsection (a)(3) against a person other than the holder. * * *

Id. Furthermore, La. R.S. § 10:3-308(b) provides:

> (b) If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under R.S. 10:3-301, unless the defendant proves a defense or claim in recoupment. <u>If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.</u>

Id. (emphasis added). Regarding a prior version of this rule, the Louisiana Fourth Circuit Court of Appeal stated, "We interpret this provision to mean that plaintiff bears the burden of proving the elements of a holder in due course." Id. at 435. Significantly, Vanderlick does not "specifically den[y] in the pleadings" that the signatures appearing on the two notes are hers, so "the authenticity of, and authority to make, each signature on the instrument" is admitted under § 3-308(a).

Vanderlick has claimed none of the defenses found in § 3-302(a)(1), but she does claim general defenses under § 3-302(a)(2), such as discharge of the obligation. If CadleRock is a holder in due course, then, it will be entitled to payment. If it is not, then it will be subject to any defenses that Vanderlick may prove. Of course, because

6

CadleRock is <u>at least</u> a holder, if Vanderlick fails to prove any defense, CadleRock will be entitled to judgment regardless of holder in due course status.

Because CadleRock ultimately bears the burden of proving holder in due course status, we turn to that issue. CadleRock claims that it achieved holder in due course status solely through the FDIC. La. R.S. § 10:3-203 ("Transfer of instrument; rights acquired by transfer") provides, in relevant part:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
>
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, <u>including any right as a holder in due course</u>, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument. * * *

<u>Id.</u> (emphasis added). If the FDIC was a holder in due course, then CadleRock would have acquired holder in due course status when the FDIC transferred the two Farmers Bank notes to CadleRock. Ordinarily, holder in due course status is determined under Louisiana law by La. R.S. § 10:3-302, which provides, in relevant part:

> (a) Subject to Subsection (c) and R.S. 10:3-106(d), "holder in due course" means the holder of an instrument if:
>
> > (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
> >
> > (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument

> contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in R.S. 10:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in R.S. 10:3-305(a).
> * * *

Id.

CadleRock argues that the FDIC achieved holder in due course status not through § 3-302, but through a special federal rule announced in D'Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447 (1942), which allows the FDIC to achieve holder in due course status without regard to state law rules to the contrary in certain situations. We need not fully discuss this rule. Although it is true that the FDIC holder rule applies to the FDIC acting in its receivership capacity or its corporate capacity, Campbell Leasing, Inc. v. F.D.I.C., 901 F.2d 1244, 1249 (5th Cir. 1990), it applies only to purchase and assumption transactions, as the Fifth Circuit has explained:

> The FDIC also invokes the protections of a holder in due course to defeat Robbins' defense. Holder in due course status, however, does not attach unless the notes were part of a purchase and assumption transaction. The record does not show and the FDIC does not allege a purchase and assumption transaction herein. To the contrary, the affidavit of its liquidation assistant establishes that the FDIC simply acquired the notes as part of the receivership estate by virtue of its appointment as receiver. The holder in due course doctrine does not apply.

F.D.I.C. v. Trans Pacific Industries, Inc., 14 F.3d 10, 12-13 (5th Cir. 1994) (footnote omitted).

Here, as in Trans Pacific, although the FDIC acted in its receivership capacity, CadleRock does not claim that there was a purchase and assumption transaction. Instead, the record clearly shows the FDIC obtained the Farmers Bank notes in the liquidation of Farmers Bank as part of the receivership estate "without the execution of

any instruments of conveyance, assignments, transfer, or endorsement." (Docs. 2-3, p. 7, and 17-4, pp. 2-3). Thus, the FDIC did not become holder in due course under the D'Oench rule, and CadleRock cannot claim holder in due course status from the FDIC.

If CadleRock hopes to claim holder in due course status, it must do so through La. R.S. § 10:3-302, but CadleRock does not claim, either in the complaint or in the motion for summary judgment, that it achieved holder in due course status any way other than through the FDIC. Nowhere does CadleRock specifically allege that it personally met the requirements for holder in due course status set out in § 3-302, except for the fact that it took the notes for value. Without evidence to that effect, CadleRock has not proved that it is a holder in due course. This is not to say that CadleRock is, in fact, not a holder in due course, only that CadleRock has not yet met its burden of proving so in this record.

One issue that may preclude holder in due course status under § 3-302 is the fact that both notes contain evident modifications, the consequences of which are contested by the parties. A prerequisite to holder in due course status is that "the instrument when issued or negotiated to the holder does not bear such apparent evidence of . . . alteration . . . as to call into question its authenticity." La. R.S. § 10:3-302(a)(1). Moreover, under § 3-302(a)(2)(iv), a transferee cannot achieve holder in due course status unless he takes the note "without notice that the instrument . . . has been altered." Here, CadleRock agrees that the notes contain facial modifications: changes to the date, maturity date, and annual percentage rate on the first note, and a change to the "total

9

of payments" amount on the second note. La. R.S. § 10:3-407 explains alterations as follows:

> (a) "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.
>
> (b) Except as provided in Subsection (c), an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.
>
> (c) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce rights with respect to the instrument (i) according to its original terms, or (ii) in the case of an incomplete instrument altered by unauthorized completion, according to its terms as completed.

Id.

An "alteration" under § 3-407, and thus § 3-302, is an "unauthorized change that purports to modify in any respect the obligation of a party." The changes to the first note (the date changes) do change the Vanderlick's obligations under the note in some way, and there is no evidence on the face of the instrument (e.g., the initials of a party to the instrument) that the change was authorized. Thus, the facial alterations on the first note are sufficient to preclude holder in due course status. See, e.g., Watts v. Brooks, 136 So. 2d 403 (La. App. 1 Cir. 1961) (visible alteration of date of check sufficient to defeat holder in due course status).

As to the second note, however, the amount of $267,391.25 appears in two other locations, one of those typed out in text, and that sum is the proper total of the installment payments. Thus, the alteration of the "total of payments" amount from

$227,391.25 to $267,391.25 is clearly only a clerical correction and does not alter the obligations of either party in any respect. See Liberty Loan Corp. of La. v. Schroeder, 242 So. 2d 97 (La. App. 4 Cir. 1970) (holding, under similar facts, that the correction was not material). Thus, the modification of that one number on the second note, under these facts, is not an alteration and would not, in itself, preclude holder in due course status.

The result of the above analysis is that CadleRock cannot be a holder in due course of the first note but may be a holder in due course of the second note, if it later presents evidence to that effect. Because CadleRock has proved that it is at least a holder of the note, this case turns on whether Vanderlick may prove a defense. If Vanderlick does not prove a defense as to either note, then CadleRock's status as holder is enough to entitle it to judgment on both notes. If Vanderlick proves a defense to the first note, that defense may preclude CadleRock's claim on the note. If Vanderlick proves a defense to the second note, then CadleRock may defeat that defense as to the second note by proving that it is a holder in due course.

Vanderlick has at least asserted general defenses under § 3-305(a)(2). For instance, in paragraph 14 of the answer (Doc. 8, pp. 2-3), Vanderlick specifically alleges alteration and claims that "collection of the note is limited pursuant to Louisiana Revised Statute 10:3-407." CadleRock argues that because Vanderlick failed to state in that paragraph that the alteration was fraudulent, she has waived that defense. However, because § 3-407(c) expressly provides that "[n]o other alteration [other than fraudulent alteration] discharges a party," for collection of the note to be limited, as Vanderlick claims, Vanderlick necessarily pled fraudulent alteration. The paragraph must be read

11

in light of the cited statute. Since only a fraudulent alteration could limit collection of the note, Vanderlick's explicit reliance on § 3-407 sufficiently pled fraudulent alteration.

CadleRock further argues that there is no evidence that the alterations were fraudulently made and that it should at least be entitled to recover on the note according to its original terms under La. R.S. § 10:3-407(c). However, under longstanding Louisiana law, evident alterations are presumed to be fraudulent. See Union Bank v. Brewer, 2 La.Ann. 835 (La. 1847); People's Bank & Trust Co. v. Thibodaux, 134 So. 100 (La. 1931). Also, § 3-407(c) applies to "a person taking [a fraudulently altered instrument] for value, in good faith and without notice of the alteration." Id. (emphasis added). Here, the alterations of the first note are evident from the face of the instrument, so a transferee would have notice of the alteration. Finally, although CadleRock argues that the alterations were mostly in Vanderlick's favor, that is not the proper standard. Cf. § 3-407 cmt. 1 ("Changes favorable to the obligor are unlikely to be made with any fraudulent intent, but if such an intent is found the alteration may operate as a discharge."). That said, Vanderlick has presented no evidence of fraud with respect to the alterations, and we must deny that defense. Although the alterations of the first note are enough to preclude holder in due course status, they cannot limit enforcement of the note by a holder without evidence that they were fraudulently made.

Fraud is not Vanderlick's only defense. There are extensive disputes over the total of payments and whether the notes have been extinguished.[1] Each side has presented documents allegedly proving its position, and each side has presented an affidavit

---

[1] Discharge alone cannot defeat the claims of a holder in due course, though notice of discharge is effective against a holder in due course. La. R.S. §§ 10:3-601(b) and 3-302(b).

explaining the origins and meaning of those documents, but it is impossible for us to make a determination without judging credibility.[2] Genuine issues of material fact remain as to key issues in this suit; this matter is not ripe for summary judgment.

## V. CONCLUSION

For the foregoing reasons, CadleRock's motion for summary judgment (Doc. 17) is DENIED.

SIGNED on this 27 day of May, 2008 at Alexandria, Louisiana.

                         DEE D. DRELL
               UNITED STATES DISTRICT JUDGE

---

[2] We note that Vanderlick's evidence, in particular, only indicates that the Farmers Bank records indicate a loan payoff, but the circumstances of that payoff and by whom the final payment was made are not indicated. To our eyes, it appears probable that the final credit listed for each note represents something other than a payment by Vanderlick. This is especially true since Vanderlick only claims that "[s]aid account histories show that there is no outstanding balance due on these accounts" (Doc. 22-3, p. 2), without ever claiming that they were paid off by Vanderlick, or even her ex-husband, Brian Vanderlick. Nevertheless, the record is ambiguous as to the records, and neither side can prevail based on its own evidence, in light of the other side's evidence. That is to say, there is enough of a genuine issue of material fact to preclude summary judgment but not necessarily enough to preclude a judgment if we were allowed to make a credibility call. That is the standard for trial, however—not summary judgment.