
UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **CADLEROCK JOINT VENTURE, L.P.** | **CIVIL ACTION NO. 06-1052** |
| -vs- | **JUDGE DRELL** |
| **ESTHER C. VANDERLICK** | **MAGISTRATE JUDGE KIRK** |

## REASONS FOR JUDGMENT

The above captioned matter came before this court as a one-day bench trial on October 28, 2008. Having heard all the relevant evidence and having reviewed the parties' post-trial memoranda, we now enter judgment for plaintiff.

I.   **Background**

Plaintiff CadleRock Joint Venture, L.P. ("CadleRock") buys debts and collects on them. CadleRock brought suit seeking payment from defendant Esther Vanderlick ("Vanderlick") on two promissory notes executed by Mrs. Vanderlick and her then-husband, the now-bankrupt Brian Vanderlick, payable to the order of The Farmers Bank & Trust of Cheneyville, Louisiana ("Farmers Bank"). In December 2002 Farmers Bank, at that time the holder of and payee on the two notes, failed.[1] It was ordered closed and liquidated by the Commissioner of Financial Institutions for the State of Louisiana. The Federal Deposit Insurance Corporation ("FDIC") was then appointed as receiver of all

---

[1] The FDIC press release hints at "deceptive lending practices at the bank," and wrongdoing of this sort was alluded to in trial testimony by a former officer of Farmers Bank. *Cf. United States v. Thibodaux*, 115 F. App'x 297 (5th Cir. 2004) (recounting guilty plea of the loan officer in question).

Farmers Bank's assets and charged with winding up the bank's affairs. As part of this process, in April 2004 the FDIC negotiated the two notes in question to CadleRock.

The Vanderlicks had made the two notes in question to finance their farming operations while they were married and living together. Note 1 is dated June 17, 1997 in the principal amount of $87,676.33 payable in seven annual installments. Note 2 is dated April 1, 1999 in the principal amount of $267,391.25 payable in seven annual installments. The Vanderlicks made payments together on the two notes until their divorce in November 2001. Esther Vanderlick, now Boe, admitted that she has made no payment on either note since the divorce. In any event, sometime later payments on the notes ceased altogether. After unsuccessful attempts at collection resulting from Brian Vanderlick's having declared personal bankruptcy, CadleRock sued Mrs. Boe as co-maker for the outstanding balances on the two notes in June 2006. CadleRock seeks payment of Note 1 in the amounts of $24,877.97 in principal, $5,081.33 in accrued interest to time of filing suit, plus further interest at 12.5% annually until paid, plus 25% of those totals for attorney fees. CadleRock seeks payment of Note 2 in the amounts of $122,519.40 in principal, $12,833.91 in accrued interest to time of filing suit, plus further interest at 9% annually until paid, plus 25% of those totals for attorney fees.

Earlier, CadleRock moved for summary judgment. In denying its motion (Doc. 27), we found that CadleRock could not be a holder in due course of Note 1 owing to alterations to that note but may be a holder in due course of Note 2 if it could produce trial evidence to that effect. We need not resolve the issue of whether CadleRock is a holder in due course in this case. The trial of this case turned on whether Mrs. Boe could

support her defense of payment. She could not. Thus, CadleRock's status as a mere holder is enough to entitle it to payment on the two notes.[2]

## II. Analysis

The law of negotiable instruments in Louisiana provides that a defense of "'[p]ayment must be specifically pleaded and proved by the litigant asserting it.'" *American Bank v. Saxena*, 553 So.2d 836, 844 (La. 1989) (quoting *T. Hofman-Olsen, Inc. v. N. Lumber Mfg. Co.*, 107 So. 593, 595 (La. 1926), in the context of Louisiana's U.C.C.-inspired Commercial Laws). "'The . . . plea of payment is an affirmative defense, and the burden is upon the pleader to prove payment.'" *Id.* (quoting *Orleans Disc. Co. v. Derbes*, 129 So. 121, 121 (1930)). At trial, CadleRock rested its case after introducing into evidence four documents: the two notes themselves as well as the two corresponding documents from the FDIC's loan history information records of Farmers Bank. These documents show outstanding balances on each note in the amounts sought by CadleRock in its complaint. In her defense, Mrs. Boe disputed the amounts claimed as unpaid on the notes, seeking to prove that the notes had indeed been paid off. As proof of her defense Mrs. Boe introduced through Farmers Bank's former operations vice president, Mrs. Nancy Allen,[3] two computer printouts, one corresponding to Note 1 and

---

[2] *See* La. Rev. Stat. Ann. § 10:3-301 (2003) ("'Person entitled to enforce' an instrument means (i) the holder of the instrument"); *id.* § 10:3-308(b) ("If the validity of signatures is admitted or proved . . ., a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under R.S. 10:3-301, unless the defendant proves a defense . . ."). CadleRock's status as holder was not disputed in this matter.

[3] Mrs. Allen also worked directly for the FDIC at the former Farmers Bank during its period of liquidation and receivership by the FDIC. She stayed on and worked for the bank that purchased Farmers Bank's assets from the FDIC.

3

another corresponding to Note 2.[4] She had obtained them directly from Mrs. Allen in May 2003, after Mrs. Boe began receiving demand letters from CadleRock. Each printout Mrs. Boe produced and introduced through Mrs. Allen shows an outstanding balance of zero on each note. Mrs. Allen could not explain the zero balance when examining the loan documentation Mrs. Boe received from her at the bank in May 2003. Mrs. Allen testified, "By looking at [Mrs. Boe's documents], I'm not really able to tell whether it would have been a payment from Mr. Vanderlick himself, a pay off from another bank, or a write off. Just from this history, I do not know." Mrs. Boe testified at trial that, if these document entries or notations represented payments, she had no idea what the source of the payments or credits to the balance might have been. Further, she had not attempted to obtain from her bankrupt ex-husband any cancelled checks in his possession that <u>might</u> have pertained to the loan payments.

In sum, there was simply no evidence produced by Mrs. Boe in her defense indicating why the balances were zero nor any proof that anyone in particular had actually satisfied the obligation. If the loans were actually paid off and not just zeroed out administratively by the bank upon transfer of the loan balances to the FDIC, who paid them? By what method were they paid? What documentation exists to prove actual payment? We would not be left with these questions had the burden of proof been satisfied. Our previous denial of CadleRock's motion for summary judgment concluded as follows:

---

[4] The two loan history documents, each of which purports to detail balances, credits, and draws for each note, are somewhat at odds with the notes themselves in that seemingly inconsistent amounts and dates appear on each. However, the parties stipulated at trial that they do not disagree that the printouts obtained by Mrs. Boe do indeed relate to the notes in question.

4

> We note that Vanderlick's evidence, in particular, only indicates that the Farmers Bank records indicate a loan payoff, but the circumstances of that payoff and by whom the final payment was made are not indicated. To our eyes, it appears probable that the final credit listed for each note represents something other than a payment by Vanderlick. This is especially true since Vanderlick only claims that "[s]aid account histories show that there is no outstanding balance due on these accounts" (Doc. 22-3, p. 2), without ever claiming that they were paid off by Vanderlick, or even her ex-husband, Brian Vanderlick. Nevertheless, the record is ambiguous as to the records, and neither side can prevail based on its own evidence, in light of the other side's evidence. That is to say, there is enough of a genuine issue of material fact to preclude summary judgment but not necessarily enough to preclude a judgment if we were allowed to make a credibility call. That is the standard for trial, however—not summary judgment.

(Doc. 27, at 13 n.2). These concerns served, early on, to put the parties on notice of the obvious evidentiary hole in the payment defense. The denial of summary judgment in Mrs. Boe's favor allowed the defense to remain alive until trial. A full and complete opportunity to prove the defense, if it existed, has been had. Mrs. Boe bore the burden of proving her defense of payment at trial. She did not present sufficient evidence to overcome our suspicions that had been observed at the summary judgment stage. The only conclusion that can be reached is that the documents from the bank (exhibits D2 and D3) reflect an administrative closing-out of the loans, because the notes had been discounted to CadleRock. Conversely, CadleRock's documents from the FDIC (exhibits P3 and P4) reflect the actual balances remaining on the Vanderlicks' obligations to the holder of the two notes, CadleRock.

### III. Conclusion

For the foregoing reasons this court awards judgment in favor of the plaintiff, CadleRock, as follows: (1) on Note 1 in the amounts of $24,877.97 in principal, plus $5,081.33 in accrued interest to time of filing suit, plus further interest at 12.5% annually

until paid; (2) on Note 2 in the amounts of $122,519.40 in principal, $12,833.91 in accrued interest to time of filing suit, plus further interest at 9% annually until paid. As discussed at trial, any award of attorneys' fees sought pursuant to the notes will be considered only in the event plaintiff files a separate motion to that effect.

SIGNED on this 28th day of April, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE